

CLERK, U.S BANKRUPTCY COURT
DISTRICT OF OREGON

SEP - 1 2004

LODGED____ REC'D____
PAID____ DOCKETED____

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON**

**RANDALL L. DUNN**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326 - 4175

JoANNE SHERMAN
LAW CLERK

KARYN A. COLE
JUDICIAL ASSISTANT

September 1, 2004

Keith S. Dubanevich
121 S.W. Morrison St., 11th Fl.
Portland, OR 97204

Robert S. Simon
1881 S.W. Naito Parkway, #100
Portland, OR 97201

Brien Flanagan
Michael D. Furlong
1211 S.W. 5th Av., #1700
Portland, OR 97204

Re: **Avalon Hotel Partners, LLC, Case No. 03-40414-rld11
Pacific Western Realty and Development Company v. Avalon
Hotel Developer, LLC, Adv. No. 04-3132-rld**

Counsel:



This adversary proceeding (the "Adversary Proceeding") came before the court for hearing (the "Hearing") on Plaintiff Pacific Western Realty and Development Company's ("PWRD") Motion for Summary Judgment against Defendant Avalon Hotel Developer, LLC ("AHD") on August 25, 2004. At the Hearing, after hearing argument and advising counsel as to my preliminary views on deciding the Adversary Proceeding, I took the matter under advisement in order further to ponder the matter and to prepare and issue written findings of fact and conclusions of law.

The Adversary Proceeding originated in the Multnomah County, Oregon Circuit Court and was removed to this court by AHD. The cause(s) of action between the parties relates to their dealings in connection with Avalon Hotel Partners, LLC ("AHP")[1], which is a chapter 11 debtor-in-possession before this court. Since PWRD's Complaint in the Adversary Proceeding seeks to collect amounts allegedly due under a promissory note or in the alternative, for money had and received, it appears to present issues of Oregon state law over which this court has "related to" rather than "core" jurisdiction for purposes of 28 U.S.C. § 157. However, both PWRD and AHD have consented to this court's entering a final judgment in the Adversary Proceeding.

---

[1] Both PWRD and AHD formerly were members of AHP.

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 2

Following the Hearing, I have reviewed the pleadings, the affidavits with evidentiary attachments submitted by the parties, my notes from the Hearing, and applicable legal authorities. The issue to be determined is whether PWRD is entitled to a judgment against AHD for failure to pay a promissory note of which PWRD is the holder.

A. Summary Judgment Standards

Granting a motion for summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c); State Farm Mutual Auto Ins. Co. v. Davis, 7 F.3d 180, 182 (9th Cir. 1993). "Material facts" are such facts as may affect the outcome of a case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine" only if there is sufficient admissible evidence to justify a finding in favor of the nonmoving party. Id. In considering a motion for summary judgment, the court is required to draw all inferences from the evidence in the light most favorable to the nonmoving party. Id.

B. Promissory Note Obligations

In the Adversary Proceeding, PWRD seeks a judgment against AHD for amounts alleged due and owing under a promissory note ("Promissory Note") in the principal amount of $208,781.27, dated January 1, 2002. The Promissory Note provides that AHD "promises and agrees to pay to the order or assigns of [PWRD]...the principal sum of $208,781.27, plus interest on the unpaid principal balance of this promissory note at 15% per annum from January 1, 2002, on or before January 29, 2004 (the "maturity date")...." According to its terms, the Promissory Note "evidences a loan made by PWRD to AHD for the limited purpose of enabling AHD to make the additional capital contribution to AHP called on November 6, 2001, pursuant to section 6.3.2 of the operating agreement of AHP." The Promissory Note further provides:

> Time is of the essence. If is [sic] promissory note is not paid on or before the maturity date, then the interest rate will be increased to 18% per annum from the due date until all this promissory note is paid in full, and PWRD may exercise any rights or remedies available at law and/or under any related security agreement.

The Promissory Note also provides that "AHD and the individual signing this promissory note on its behalf represent and warrant to PWRD that (a) the members of AHD have duly authorized AHD to sign this promissory [sic] and the related security agreement and to perform its obligations under such instruments, (b) such instruments are enforceable against AHD and its members in accordance with their terms...." The Promissory Note was signed in behalf of AHD by A. Paul Brennecke ("Mr. Brennecke"), its managing member. The parties are agreed that AHD signed the Promissory Note and delivered it to PWRD.

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 3

---

The Promissory Note further provides that it "will be governed by the substantive provisions of Oregon law."

AHD admits that in June 2002, PWRD and AHD agreed that AHD would execute a promissory note to PWRD in exchange for payment of AHD's capital contributions owed to AHP. AHD also admits that it has never made any payments on the Promissory Note.

C. Defenses to Liability

In its Response to PWRD's Motion for Summary Judgment, AHD argues that summary judgment should be denied because genuine disputes of material fact exist with respect to the following issues: (1) whether PWRD provided consideration for AHD's execution of the Promissory Note; (2) whether the Promissory Note was intended to be a recourse obligation against AHD; and (3) whether the terms of the Promissory Note are ambiguous. I will discuss each of these defenses in turn.

D. Consideration

Under the terms of the Promissory Note, AHD's promise to pay is given "for value." The Promissory Note goes on to explain that it "evidences a loan made by PWRD to AHD for the limited purpose of enabling AHD to make the additional capital contribution to AHP called on November 6, 2001, pursuant to section 6.3.2 of the operating agreement of AHP." AHD agrees in its Response to Plaintiff's Concise Statement of Material Facts that "in June of 2002, PWRD and AHD agreed that AHD would execute a promissory note to PWRD in exchange for the Pacific Entities'[2] provision of AHD's capital contributions owed to AHP." Defendant's Response to Plaintiff's Concise Statement of Material Facts, ¶ 14, p. 4.

In response to AHD's lack of consideration argument, PWRD submitted the Affidavit of Mark Wilson, the former Chief Financial Officer for Avalon Holdings "which did business as Avalon Hotel Developer, LLC (AHD)," from May 1, 2000, to July 27, 2002. Affidavit of Mark Wilson, ¶ 1, p. 1. In his Affidavit, Mr. Wilson states, "In consideration for a promise to pay, PWRD advanced $208,781.27 to AHP to the benefit of AHD's capital account. AHD's capital account was in fact credited with the $208,781.27 contributed by PWRD." Affidavit of Mark Wilson, ¶ 7, p. 2.

In addition, PWRD submitted the Affidavit of Peter Chinloy ("Mr. Chinloy"), who managed PWRD from 1994 to 2003 and is a current director and shareholder of PWRD. Affidavit of Peter Chinloy, ¶ 2, p. 2. In his Affidavit, Mr. Chinloy states the following:

---

[2] PWRD and its affiliated entities frequently are referred to by the parties as the "Pacific Entities."

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 4

> Pursuant to the [Promissory] Note, PWRD lent AHD $208,781.27 to meet AHD's cash call obligation with the loan term being until January 29, 2004, at an annual interest rate of 15%. The consideration for AHD's loan was made in two deposits. First, PWRD deposited $150,000 into AHP's account with Centennial Bank on May 3, 2002, as shown in AHP's bank statement from Centennial Bank, a true and correct copy of which is attached hereto as Exhibit 6. Second, on May 21, 2002, PWRD wired $150,000 into the escrow account with Chicago Title as demonstrated in the Chicago Title wiring receipt confirmation, a true and correct copy of which is attached hereto as Exhibit 7....$208,781.21 of the $300,000 deposit made by PWRD was credited to the benefit of AHD's capital account. Mr. [Mark] Wilson made the capital account calculations, as CFO of AHD–the managing member of AHP. Mr. [Robert] Simon forwarded the capital account calculations to AHP's members on multiple occasions. Affidavit of Peter Chinloy, ¶'s 12, 13 and 15, p. 4.

A copy of a document identified by Mr. Chinloy as a true and correct copy of capital call calculations (the "Capital Call Accounting") for the Avalon Hotel and Spa is attached as Exhibit 10 to Mr. Chinloy's Affidavit. Affidavit of Peter Chinloy, ¶ 15, p. 4 and Ex. 10. The Capital Call Accounting reflects a credit to the capital account of AHD in the amount of $208,781.27 as of June 20, 2002.

In support of its argument that AHD did not receive consideration for its execution of the Promissory Note, the only evidence AHD offers is the statement of Mr. Brennecke in his affidavit dated July 30, 2004, that, "After I executed the Note and Security Agreement, no funds in consideration for the Note were ever transferred to AHD by PWRD." Affidavit of A. Paul Brennecke, dated July 30, 2004, ¶ 9, p. 5. [Emphasis added.] However one wants to interpret the quibbling reflected in that statement, in light of the evidence offered by PWRD to support its position that substantial consideration was provided for the benefit of AHD to support AHD's obligation under the Promissory Note, I find that AHD has not raised any genuine issue of material fact that would justify denying PWRD summary judgment based on an alleged failure of consideration. PWRD paid $208,781.27 to AHP for the benefit of AHD, to satisfy an AHD capital call obligation. I find that AHD signed and delivered the Promissory Note in consideration for that payment.

E. Recourse v. Nonrecourse Obligation

AHD argues that a genuine issue of fact exists as to whether PWRD can enforce the payment obligations of the Promissory Note directly against AHD. AHD's position is that PWRD and AHD agreed that PWRD's sole remedy in the event that the Promissory Note obligation was not paid was to foreclose PWRD's security interest in a 1.955% ownership interest in AHP, as provided for in the Promissory Note and a related Security Agreement (the

Case 04-03132-rld    Doc 71    Filed 09/01/04

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 5

"Security Agreement"). Accordingly, AHD argues that the Promissory Note is a nonrecourse obligation.

In support of its argument, AHD further argues that the parol evidence rule does not apply to prevent the court from considering extrinsic evidence of the antecedent agreement(s) and intent of the parties, because the Promissory Note is not an integrated agreement, i.e., it should not be regarded as the final expression of all of the terms of the agreement between AHD and PWRD. In support of its parol evidence argument, AHD characterizes the Promissory Note as merely one part of a larger series of transactions among AHD, PWRD and various of their respective affiliates.

The Promissory Note includes a provision that, "This promissory note and any related security agreement may be modified only in a writing signed by AHD and PWRD." From this provision, PWRD argues that the Promissory Note must be a fully integrated agreement because the parties could not change its written terms except by means of a further writing signed both by PWRD and AHD.

Under Oregon law, the parol evidence rule is a statutory codification of common law principles. See, e.g., Hatley v. Stafford, 284 Or. 523, 526 n.1, 588 P.2d 603, 605 n.1 (1978). Oregon Revised Statutes Section 41.740 provides that:

> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud....

Oregon Revised Statues Section 42.220 provides that:

> In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting.

I agree with AHD that evidence as to the larger picture of relationships and agreements among PWRD and its affiliates, AHD and AHP is relevant and admissible to provide context for my consideration of the Promissory Note. Indeed, nothing in ORS Sections 41.740 and 42.220 prevents my consideration of such evidence to place myself as closely as possible into the

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 6

positions of the parties in interpreting the Promissory Note language. However, my consideration of such evidence is not without limits.

Whether admissible or not, evidence of an alleged oral term that is inconsistent with or contradicts the written terms of the parties' agreement is legally ineffective. See Abercrombie v. Hayden Corp., 320 Or. 279, 286, 289, 883 P.2d 845, 850, 851 (1994); Hatley v. Stafford, 284 Or. at 533-34, 588 P.2d at 608-09. AHD argues that the Promissory Note is not a fully integrated agreement. As a partially integrated agreement, the argument continues, this court can consider evidence of "an additional non-recourse term to the agreement that does not contradict the terms of either the Note or the Security Agreement." Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 7.

The problem for AHD is that I do not find the terms of the Promissory Note ambiguous as a full recourse obligation of AHD. I do not need to determine whether the Promissory Note is a fully or partially integrated agreement to arrive at that conclusion. See Abercrombie v. Hayden Corp., 320 Or. at 291, 883 P.2d at 852. The Promissory Note opens with the statement of AHD that it "promises and agrees to pay to the order or assigns of [PWRD]...the principal sum of $208,781.27, plus interest on the unpaid principal balance...at 15% per annum from January 1, 2002, on or before January 29, 2004 (the "maturity date")...." The Promissory Note goes on to state that,

> Time is of the essence. If is [sic] promissory note is not paid on or before the maturity date, then the interest rate will be increased to 18% per annum from the due date until all this promissory note is paid in full, and PWRD may exercise any rights or remedies available at law and/or under any related security agreement.

The Promissory Note also states that,

> AHD and the individual signing this promissory note on its behalf represent and warrant to PWRD that (a) the members of AHD have duly authorized AHD to sign this promissory [sic] and the related security agreement and to perform its obligations under such instruments, (b) such instruments are enforceable against AHD and its members in accordance with their terms....

The Promissory Note further states that "AHD may prepay all or any part of the unpaid principal balance of this promissory note at any time without prior notice or penalty." In addition, the Promissory Note refers not less than five times to changes in covenants that are to occur when the Promissory Note is "paid in full."

AHD argues that since the Promissory Note does not state explicitly that it is a recourse or nonrecourse obligation, interpreting the promissory Note as a nonrecourse obligation would be no more than adding a consistent supplemental term. I disagree. The language of the Promissory

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 7

---

Note, as stated above, is inconsistent with a nonrecourse obligation. It clearly sets forth a promise to pay on the part of AHD and a recognition by AHD and its signing managing member that the obligations of the Promissory Note are enforceable against AHD.

AHD further argues that the Promissory Note is ambiguous because in stating that PWRD "may exercise any rights or remedies available at law and/or under any related security agreement," it is not precise and "gives no notice of its impact." Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 11. The Promissory Note provides that it is governed by the substantive provisions of Oregon law. I find nothing ambiguous in the Promissory Note providing for alternative and concurrent remedies in the event of nonpayment. The Promissory Note provides that if it is not paid on or before its maturity date, PWRD may exercise any and all rights and remedies available at law in Oregon <u>and/or</u> PWRD may exercise any rights or remedies available under the Security Agreement. That language clearly states that if the Promissory Note is not paid by its maturity date, PWRD may elect to pursue collection against AHD by an action at law, and in addition may elect to pursue such remedies as are available under the Security Agreement.

AHD also argues that since the Promissory Note and Security Agreement are so precise in stating the remedies that PWRD may exercise in the event of nonpayment of the Promissory Note with respect to the 1.955% membership interest in AHP, assigned by AHD as collateral, "AHD has highlighted an ambiguity by offering the reasonable interpretation that the [Promissory] Note provides for foreclosure of the [Promissory] Note collateral as PWRD's sole remedy." Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 11. As stated by counsel for PWRD in oral argument at the Hearing, it would be a real shock to banks and other parties regularly engaged in secured transactions to learn that describing their collateral and their rights and remedies regarding such collateral in detail could be interpreted as foreclosing alternative legal rights and remedies provided for in their agreements, as unenforceably ambiguous. I find that describing in detail PWRD's remedies with respect to its collateral in the Promissory Note and the related Security Agreement does not create an ambiguity that precludes enforcing other rights and remedies under Oregon law, as provided for in the Promissory Note. To the extent Mr. Robert Simon states a different legal conclusion in his affidavit filed in opposition to PWRD's Motion for Summary Judgment, I disagree and have applied the law as I have determined to be appropriate. <u>See</u> Affidavit of Robert Simon, ¶ 3, p. 2.

But, AHD goes on to argue, "AHD has testified that PWRD and AHD agreed that the Note was to be non-recourse as to AHD." Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 11. The subject statement comes from the affidavit of Mr. Brennecke, dated July 30, 2004. Affidavit of A. Paul Brennecke, dated July 30, 2004, ¶ 7, p. 4.

Fed. R. Civ. P. 56(e) provides that, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." PWRD has

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 8

objected to said statement from the affidavit of Mr. Brennecke on the ground that it is inadmissible as violating the parol evidence rule. Plaintiff's Objections to Controverting Evidence Filed in Support of Defendant's Response to Motion for Summary Judgment, p. 3. Whether or not said statement is inadmissible under the Federal Rules of Evidence, it has no legal effect in light of the prohibition under the parol evidence rule of my considering evidence that is inconsistent with the written terms of the parties' agreement set forth in the Promissory Note, as discussed above.

AHD also cites the $600,000 Timberwood promissory note (the "Timberwood Note"), signed by an affiliate of PWRD as obligor to AHP, as evidence that in the dealings among PWRD and its affiliates, AHD and AHP, a promissory note was "not necessarily the final or exclusive statement of an agreement." Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 7. In his deposition, Mr. Chinloy admitted that the Timberwood Note was not meant to be an enforceable payment obligation. See Affidavit of Michael D. Furlong, Ex. A, p. 10. However, the Timberwood Note is a two-edged sword in this case.

The Timberwood Note was executed on or about March 22, 2002, several months before the Promissory Note was negotiated, signed and delivered. See Affidavit of Michael D. Furlong, Ex. A, p. 5. Section 3 of the draft Timberwood Note authenticated by Mr. Chinloy, titled "Limitation on Borrower's Liability," provides as follows:

> Notwithstanding any other term, provision, of [sic] condition of this Note, Lender agrees that any money judgment or deficiency obtained at any time under or pursuant to this Note by Lender against Borrower, or any person which may hereafter become Borrower, shall be collected only out of the interest of Borrower (or of such other person or entity) in the Improvements. In no event shall Borrower, any successor, or any affiliate of Borrower (including, but not limited to any stockholder, individual, partner, member, joint venturer, trustee, beneficiary, or any other person or entity directly or indirectly interested in Borrower or any successor) be otherwise personally liable for any such money judgment or deficiency.

Accordingly, the Timberwood Note specifically provides that it would be nonrecourse as to the Borrower named therein and any of its successors and affiliates. The terms of the earlier Timberwood Note establish that affiliates of PWRD and AHD engaged in AHP related transactions knew how to draft a nonrecourse provision in a promissory note. Yet, no nonrecourse term was incorporated in the Promissory Note.

Based on the foregoing analysis, I find that the recourse terms of the Promissory Note are not ambiguous. To interpret the Promissory Note as nonrecourse would be inconsistent with its clear and express terms, contrary to the parol evidence rule.

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 9

---

F. Reformation

AHD has moved to amend its Answer in the Adversary Proceeding to add a counterclaim for reformation of the Promissory Note. PWRD does not oppose the amendment, and I will enter an order allowing AHD to amend its Answer to include a reformation counterclaim. I likewise have considered AHD's reformation argument in opposition to PWRD's Motion for Summary Judgment.

> Under Oregon law, a party seeking reformation of a written agreement must establish, by the appropriate quantum of proof, (1) that there was an antecedent agreement to which the contract can be reformed; (2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and (3) that the party seeking reformation was not guilty of gross negligence. Jensen v. Miller, 280 Or. 225, 228-29, 570 P.2d 375, 377 (1977).

The use of the conjunction "and" means that the party attempting to prevail on a reformation action bears the burden of proof to establish each of the foregoing three elements. See id. at 229, 570 P.2d at 377.

Parol evidence is admissible to establish that an agreement was entered into by mutual mistake, or the mistake of one party abetted by the fraud or inequitable conduct of the other. See De Tweede Northwestern & Pacific Hypotheekbank v. W.M. Barnett Estate, 160 Or. 406, 416, 85 P.2d 361, 365 (1938).

AHD argues that it has submitted evidence to support the first reformation element, existence of an antecedent agreement. That evidence is set forth in paragraph 7 of the affidavit of Mr. Brennecke, dated July 30, 2004, which states in relevant part:

> PWRD agreed that if AHD did not pay off the promissory note by the maturity date, that PWRD would be limited to recourse against the collateral securing the promissory note's obligations. PWRD and AHD both understood that it was highly unlikely that AHD would be able to pay off a promissory note because AHD had no prospective sources of funds to apply to its debts. The parties further understood that the promissory note would actually be a method by which AHD would sell a portion of its membership interest in AHP to PWRD in exchange for an option to repurchase that interest if AHD paid off the promissory note by the maturity date. Affidavit of A. Paul Brennecke, dated July 30, 2004, ¶ 7, p. 4.

Mr. Brennecke does not say who so agreed or expressed such understandings in behalf of PWRD, and he does not refer to any documents to support his statements.

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 10

PWRD has objected to such statements in paragraph 7 of Mr. Brennecke's affidavit, dated July 30, 2004, under Fed. R. Evidence 602, as beyond Mr. Brennecke's personal knowledge. Plaintiff's Objections to Controverting Evidence Filed in Support of Defendant's Response to Motion for Summary Judgment, p. 3. I find PWRD's FRE 602 objection to such testimony of Mr. Brennecke in his affidavit to be well taken.

In his deposition, when asked about certain terms of the Promissory Note, Mr. Brennecke testified, "I mean, I wasn't involved in this negotiation." Affidavit of Keith S. Dubanevich, Ex. 4, p.19.

In his deposition, Mr. Chinloy testified as follows:

Q. Okay. Did you have any discussions with the other members of–any members of AHD prior to the execution of this [Promissory N]ote in which you offered or made know your desire to purchase their membership interests in AHP?
A. No. This was simply security that our counsel had advised us to put in there as security for the note.
Q. So you weren't seeking, at any time prior to the execution of this note, additional membership interests in AHP?
A. No.
Q. Or any of the Pacific Western entities seeking additional membership interests in AHP?
A. No.....
Affidavit of Keith S. Dubanevich, Ex. 3, pp. 7-8.

In his deposition, in referring to the Promissory Note, Mr. Simon testified that, "Mr. Chinloy and Mr. Wilson are the parties who negotiated its principal terms and then drafted it." Affidavit of Keith S. Dubanevich, Ex. 6, p. 3.

In his affidavit, Mr. Chinloy states the following:

During June 2002, I negotiated on behalf of PWRD with representatives of AHD. Specifically, I negotiated with Mark Wilson, who was the Chief Financial Officer of AHD, and Robert Simon, whose role was unclear. I do not recall having any conversations with Paul Brennecke regarding the loan by PWRD to AHD. Affidavit of Peter Chinloy in Support of Plaintiff's Reply, ¶ 5, p. 2.

In his affidavit, Mark Wilson states the following:

Beginning in May 2002, I spoke with Peter Chinloy of [PWRD], about the possibility of a loan from PWRD to AHD so that AHD could meet its cash call obligations. During June 2002, Peter Chinloy, Robert Simon and I negotiated the

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 11

> terms of a promissory note. There were many drafts circulated among the parties. Paul Brennecke, however, did not play an active role in the negotiations....As AHD's representative in the negotiations, I did not understand the Promissory Note to be a mechanism through which PWRD would purchase 1.955% of AHD's interest in AHP. Indeed, there were no such discussions in connection with the $208,781.27 loan from PWRD to AHD. I understood the Promissory Note to be a recourse obligation for AHD. As CFO it was always my intent and expectation that AHD would have to repay the loan in full when it became due. I understood that AHD would be liable to pay the full amount of the Promissory note when due. Affidavit of Mark Wilson, ¶'s 5,6,8,9 and 10, p. 2.

In his supplemental affidavit, dated August 24, 2004, Mr. Brennecke states that, "Mr. Wilson's allegation that he understood the Note that is the subject of the above-entitled action to be a full recourse Note is false." Affidavit of A. Paul Brennecke, dated August 24, 2004, ¶ 4, p. 2. PWRD objects to that statement in Mr. Brennecke's supplemental affidavit as "incompetent summary judgment evidence under F.R. Civ. P. 56(e)," and I will sustain PWRD's objection.

Neither party has presented any evidence tending to indicate that PWRD ever asserted an ownership interest in the percentage interest in AHP assigned by AHD as collateral to PWRD in the Security Agreement and referred to in the Promissory Note..

Based on the foregoing review of the evidence submitted by the parties, I find that AHD has not submitted any admissible evidence in support of its argument that there was an antecedent agreement to which the Promissory Note can be reformed. Accordingly, AHD has not presented any admissible evidence to raise a genuine issue of material fact as to the first element required to make a case for reformation of the Promissory Note.

As to mistake, Mr. Brennecke states that,

> I did not understand the [Promissory] Note to contradict AHD's previous agreement with PWRD that PWRD would be limited to recourse against the collateral cited in the [Promissory] Note and Security Agreement in the event of default on the [Promissory] Note obligations by AHD....I would not have executed the Note if PWRD had ever represented that PWRD had recourse against AHD in the event of default on the Note obligations. Affidavit of A. Paul Brennecke, ¶ 8, p. 5.

In his affidavit, Mr. Simon states that,

> I reviewed the [Promissory] Note and determined that because the [Promissory] Note described the collateral securing it with such specificity, right down to the

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 12

percentage point of ownership being pledged, that the [Promissory] Note would be read to mean that it was recourse only against that described collateral in the event the [Promissory] Note was not paid by the maturity date. Accordingly, I concluded that the [Promissory] Note was adequately clear that it was a non-recourse obligation to AHD having any individual liability in the event that the [Promissory] Note was not paid by the maturity date. Affidavit of Robert Simon, ¶ 3, p. 2.

I previously have noted my disagreement with Mr. Simon's legal conclusion as to the recourse nature of the Promissory Note obligation. However, assuming for purposes of summary judgment that AHD signed the recourse Promissory Note by mistake, there is no admissible evidence in the record before me tending to establish either that the mistake was mutual or that AHD's execution and delivery of the Promissory Note was procured by fraud or other inequitable conduct on the part of PWRD. AHD has failed to present adequate evidence to raise a genuine issue of material fact as to the second element of the test to prevail on a counterclaim for reformation.

I will assume, with the evidence before me tending to establish that the Promissory Note terms were negotiated in behalf of AHD by AHD's CFO (Mr. Wilson) and counsel for Mr. Brennecke (Mr. Simon), that AHD has raised a genuine issue of material fact as to whether AHD committed gross negligence in executing the Promissory Note as written. However, raising a genuine issue of material fact as to only one of the required three elements for a reformation case does not withstand a motion for summary judgment. Even taking into consideration, AHD's reformation arguments, I find that it is appropriate to grant summary judgment in PWRD's favor.

G. Damages

Based on my foregoing findings, I find that PWRD is entitled to damages in the principal amount of the Promissory Note–$208,781.27. However, as I advised the parties at the Hearing, I have some questions as to the calculation of interest. Mr. Brennecke states in his affidavit, dated July 30, 2004, that the Promissory Note was back dated to January 1, 2002, even though it was not signed until June 24, 2002. Affidavit of A. Paul Brennecke, dated July 30, 2004, ¶ 8, p. 5. Mr. Chinloy stated in his affidavit that he did not recall why the Promissory Note was dated January 1, 2002. Affidavit of Peter Chinloy, ¶ 11, p. 2. I have asked the parties for any additional evidence they have to shed light on the Promissory Note date, so that I can determine the appropriate date from which to calculate accruing interest.

I also have asked counsel for PWRD to provide an itemization of time spent and expenses with respect to the Adversary Proceeding, with an opportunity to AHD to object, so that I can determine reasonable fees and costs to be awarded pursuant to the terms of the Promissory Note.

Keith S. Dubanevich
Brien Flanagan
Michael D. Furlong
Robert S. Simon
September 1, 2004
Page 13

---

Accordingly, I am not in a position at present to make a definitive award of damages, fees and costs.

## Conclusion

Based on the foregoing findings of fact and conclusions of law, I find that it is appropriate to grant PWRD's Motion for Summary Judgment, reserving only the question of the amounts of damages and reasonable fees and costs to be awarded. Counsel for PWRD should prepare and submit an appropriate form of order for my signature consistent with the holding in this letter opinion, after submitting such order for review and comment as to form to counsel for AHD.

Very truly yours,

RANDALL L. DUNN
Bankruptcy Judge

RLD:kc
cc: U.S. Trustee